UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SVETLANA ARIZANOVSKA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:09-cv-1404-RLY-DML |
| | ) | |
| WAL-MART STORES, INC., | ) | |
|     Defendant. | ) | |

**ENTRY ON WAL-MART'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Svetlana Arizanovska ("Plaintiff"), of Macedonian descent, is a former employee of Wal-Mart Stores, Inc. ("Wal-Mart"). Following Plaintiff's second pregnancy, her doctor placed her on light-duty restrictions. When she asked Wal-Mart to be placed on light duty, Wal-Mart failed to accommodate her under its Accommodation in Employment Policy. In Count I of her Complaint, Plaintiff alleges that Wal-Mart's decision to deny her this accommodation constituted a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), and national origin discrimination. Plaintiff also alleges that Wal-Mart retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In Count II, Plaintiff alleges that Wal-Mart's failure to train its supervisors regarding nondiscriminatory practices constitutes negligent supervision; in Counts IV-V, she alleges that her supervisors engaged in conduct that intentionally and negligently caused her emotional distress; and in Count III, she alleges

1

that Wal-Mart is liable for the conduct of its supervisors under a theory of respondeat superior.

Wal-Mart now moves for summary judgment on all of Plaintiff's claims. For the reasons set forth below, the court **GRANTS** Wal-Mart's motion.

**I.    Background**

Plaintiff is from Macedonia, and began working at Wal-Mart in November 2007. (Deposition of Svetlana Arizanovska ("Plaintiff Dep.") at 16, 30). She initially worked at the Plainfield Store and transferred to the Lafayette Road Store just prior to the store's opening. (*Id*. at 30-31). Plaintiff worked the night shift from 10:00 p.m. to 7:00 a.m. on Fridays, Saturdays, and Sundays[1] as a stocker. (*Id*. at 45-46). The Lafayette Road Store is not open 24 hours, so all of the overnight associates are considered stockers. (Affidavit of Curtis Mace ("Mace Aff.") ¶ 5). Plaintiff's job duties as an overnight stocker included finding items for her assigned areas and placing the items on the shelves. (Plaintiff Dep. at 23, 30, 39-41). Plaintiff's supervisor was Assistant Manager Nyra Buckner ("Buckner"), an African-American. (*Id*. at 23; Affidavit of Svetlana Arizanovska ("Plaintiff Aff." ¶ 4). Plaintiff's overnight supervisor was Eddie Houston ("Houston"), an African-American. (Plaintiff Dep. at 23; Plaintiff Aff. ¶ 4). Plaintiff was one of the better stockers and never received any discipline during her employment. (*Id*. at 45-46;

---

[1] Plaintiff also worked at Henry Schein Monday through Friday from 10:30 a.m. until 7:00 p.m. (Plaintiff Dep. at 56, 60). This job entailed picking medicines to complete orders and packing medicine into boxes for shipment. (*Id*. at 52-53). This job, like her job at Wal-Mart, also required her to lift items between 10 and 30 pounds. (*Id*. at 55-56).

2

Deposition of Nyra Buckner ("Buckner Dep.") at 12).

Buckner gave Plaintiff her job assignments at the beginning of each night. (Defendant's Ex. D at 23). Plaintiff typically worked in Aisles 3, 5, or 7. (*Id.* at 32). Aisle 3 contained the Hispanic and international food. (Buckner Dep. at 9; Deposition of Eddie Houston ("Houston Dep.") 33-34). Generally, the items in Aisle 3 weighed between three and five pounds; however, the rice weighed about 30 pounds because it was packaged together. (Plaintiff Dep. at 33, 35; Buckner Dep. at 35). At any given time, a stocker was required to lift up to 50 pounds. (Plaintiff Dep. at 33; Buckner Dep. at 35).

In November 2008, Plaintiff learned she was pregnant. (Plaintiff Dep. at 80, 124-25). Plaintiff experienced bleeding and/or spotting and went to the Westview Hospital Emergency Room on January 1, 2009. (*Id.* at 82-83). She returned to the emergency room on January 9, 2009, with flu-like symptoms, and, on January 12, 2009, returned again to the emergency room after experiencing a vaginal discharge. (*Id.* at 83-84, 126). At some point after January 12, 2009, her doctor gave her a statement, which she gave Buckner, that said she was not to lift more than 20 pounds. (*Id.* at 127-28). After that date, Buckner assigned Plaintiff to work in the baby food and toothbrush aisles. (*Id.* at 128-29). On January 25, 2009, Buckner assigned Plaintiff to work in Aisle 3. (*Id.* at 129). Plaintiff complained to Houston, but did not complain to Buckner. (*Id.* at 129-31). Buckner testified, however, that she learned of Plaintiff's complaints (she could not remember who she heard it from), but "continued to put her in Aisle 3." (Buckner Dep. at 22-23). During a break that evening, Plaintiff noticed some spotting, and, two days later,

she suffered a miscarriage. (Plaintiff Dep. at 81, 134, 136). Plaintiff requested, and Wal-Mart approved, a leave of absence from February 12-15, 2009. (*Id*. at 114-15).

After returning to work, Plaintiff filed a charge of discrimination with the EEOC on February 23, 2009, alleging, among other things, discrimination in violation of the PDA. (Plaintiff's Ex. 7).

In May 2009, Plaintiff learned she was pregnant again, and, on May 16, 2009, she provided Wal-Mart with a doctor's note that stated that she could not lift more than 10 pounds. (*Id*. at 94-95; Plaintiff Dep. Ex. 20). The 10-pound lifting restriction meant Plaintiff could not perform her job duties as a stocker. (*Id*. at 96-97). Plaintiff told Personnel Manager Luann Christy ("Christy") that she wanted to fold clothes. (*Id*. at 110; Deposition of Luann Christy ("Christy Dep.") at 6). There is no position – either overnight during Plaintiff's shift or during the day – that entails folding clothes exclusively. (Declaration of Nyra Buckner ¶ 4). Because Plaintiff was unable to perform her job duties, Christy told Plaintiff that she would need to take a leave of absence. (Christy Dep. at 35). Christy also sent an email to Curtis Mace ("Mace"), Human Resources Manager for the Lafayette Road Store, who confirmed that Plaintiff "will need to take a [leave of absence] until she is able to work within the essential job functions." (Plaintiff's Ex. 11).

Mace testified that in answering Christy's email, he relied on Wal-Mart's Accommodation in Employment Policy. (Mace Aff. ¶ 7). The policy generally provides that if an associate has a non-work-related short-term medical restriction that prevents the

associate from performing his or her job, the associate must transfer to an open position or take a leave of absence until the restrictions are lifted by the associate's doctor. (*See id.* ¶ 8; *see also* Accommodation in Employment Policy, attached to the Affidavit of Curtis Mace). The policy specifically excludes light duty work. (*See* Accommodation in Employment Policy ("This type of accommodation does not include creating a job, light duty or temporary alternative duty, or reassignment.")).

On May 20, 2009, Plaintiff told Christy that she would not take a leave of absence because her "doctor said [she was] not sick" and that she wanted "light duty," specifically, she wanted to "fold clothes." (Plaintiff Dep. at 104, 108, 110). Christy told Plaintiff that she could not fold clothes, and that she would need to take a leave of absence or have her doctor release her from her medical restrictions in order to come back to work. (Christy Dep. at 34-35). Plaintiff did not return to work at Wal-Mart after May 20, 2009. (Plaintiff Dep. at 104-05; Christy Dep. at 36).

Plaintiff's doctor thereafter placed her on bed rest, and on June 11, 2009, she suffered another miscarriage. (Plaintiff Dep. at 75-76).

Plaintiff filed suit against Wal-Mart on November 10, 2009.

## II.   Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Some alleged factual dispute that does not rise to a genuine issue of material fact will not alone defeat a summary judgment motion.  *Id*. at 247–48.

In deciding whether a genuine issue of material fact exists, the court views the evidence and draws all inferences in favor of the nonmoving party.  *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).  However, when a summary judgment motion is made and supported by evidence as provided in Rule 56(c), the nonmoving party may not rest on mere allegations or denials in its pleadings but "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

### III.  Discussion

#### A.  Plaintiff's Pregnancy Discrimination/National Origin Discrimination Claims

Plaintiff contends that she was forced out of her job at Wal-Mart due to pregnancy and national origin discrimination.  Plaintiff pursues these discrimination claims under the indirect method of proof.  As such, she must show: (1) she is a member of a protected class; (2) she was meeting Wal-Mart's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) similarly situated associates not in the protected class were treated more favorably.  *Serednyj v. Beverly Healthcare*, LLC, – F.3d – , 2011 WL 3800123, at *7 (7th Cir. Aug. 26, 2011) (pregnancy discrimination); *Salas v. Wisconsin Dep't of Corrections*, 493 F.3d 913, 922 (7th Cir. 2007) (national origin discrimination).  If Plaintiff establishes a prima facie case of discrimination, Wal-

6

Mart must offer a legitimate, nondiscriminatory reason for its employment decision. *Serednyj*, – F.3d – , 2011 WL 3800123, at *7. The burden then shifts back to Plaintiff to prove that the articulated reason is pretextual. *Id*.

Adverse employment actions affect the terms and conditions of one's employment, such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Plaintiff identifies her adverse employment action as Wal-Mart placing her on a "forced" unpaid leave of absence because "it was unwilling to accommodate her request for light duty." (Plaintiff's Response at 17).

Plaintiff worked the night shift as a stocker, which was the only position[2] offered on that shift. Plaintiff was restricted from lifting more than 10 pounds; however, the stocker position required an associate to lift 50 pounds. Thus, because Plaintiff was not qualified for the position of stocker, and because that was the only position available on the night shift, Wal-Mart offered Plaintiff a leave of absence. (Mace Aff. ¶ 5). Accordingly, Wal-Mart's application of its Accommodation in Employment Policy to the

---

[2] Buckner testified that overnight associates "were to stock, zone, process returns, and clean the entire store. (Buckner Aff. ¶ 2; *see also* Buckner Dep. at 8). The evidence is unclear as to whether the position of "stocker" entails all of these duties, such that an overnight associate processing returns was also subject to 50-pound lifting requirement. *But see* Macer Aff. ¶ 5 ("[A]ll of the Overnight Associates are stockers who had to be able to lift up to 50 pounds."). However, Plaintiff never objected to this fact, and, in any event, it remains undisputed that "there was no other position she could transfer to that would meet her lifting restrictions." *Id*.

Plaintiff, which gave her the option of choosing a leave of absence, is not an adverse job action.

In addition, Plaintiff presents no evidence that similarly situated employees not in the protected class were treated more favorably. In her Response, she cites to two Wal-Mart associates named Joyce and Sara, who were, like Buckner and Houston, African-American. Plaintiff claims that "Sara" and "Joyce" were treated more favorably because they were African-American, and, during their pregnancies, they were allowed to work in health and beauty (Sara), and hardware and infants (Joyce). (Plaintiff's Response at 12-13; *see also* Buckner Dep. at 17 (testifying that Joyce and Sarah did work in those departments)). The evidence presented by Wal-Mart, which remains undisputed, is that no overnight associate, including Sara or Joyce, ever provided temporary medical restrictions due to pregnancy to Buckner. (Buckner Aff. ¶¶ 5, 9).

Plaintiff also cites the testimony of Christy regarding a pregnant associate who provided a restriction of sitting for 15 minutes every two hours. (Christy Dep. at 27). This did not require an accommodation on Wal-Mart's part, because Wal-Mart's "policy is every two hours you take a break, two hours later you take a lunch, and two hours later you take a break." (*Id.*).

In addition, Plaintiff argues that Wal-Mart's Accommodation in Employment Policy "provides preferential treatment for one who breaks his 'wrist or an arm' outside of work over a pregnant woman whose condition was attained outside of work." (Plaintiff's Response at 19). This argument fits more appropriately into a direct case,

because it is really a challenge to the policy itself.

The policy on its face treats pregnant and nonpregnant associates the same – i.e., if an associate acquires a non-work-related short-term medical condition, he or she may request a transfer to an open position or take a leave of absence until the restriction is lifted by his or her doctor.  Were Wal-Mart to accommodate Plaintiff by assigning her light duty work (to the extent that is possible on an overnight shift), Wal-Mart would effectively be treating its pregnant associates more favorably than its nonpregnant associates who have a non-work-related short-term medical condition.  Title VII does not require this type of accommodation.  *See Serednyj*, – F.3d – , 2011 WL 3800123, at *5 ("[A]n employer is not required to provide an accommodation to a pregnant employee unless it provides the same accommodation to its similarly situated nonpregnant employees.").

Moreover, the evidence does not support Plaintiff's assertion that Wal-Mart's policy was discriminatory as applied.  The only evidence submitted by Plaintiff is from the testimony of Store Manager Joseph Stephenson ("Stephenson"), whom Plaintiff never spoke to about her job assignment or restrictions.  (Plaintiff Dep. at 26).  Stephenson testified that, if an associate broke his or her arm or wrist outside of work, Wal-Mart "would look for employment that would accommodate that person," but would not do the same for a pregnant associate because pregnancy is "not an impairment." (Deposition of Joseph Stephenson ("Stephenson Dep.") at 53).  Stephenson, however, had no involvement in the handling of Plaintiff's pregnancy restrictions and/or leave. (*Id*. at 19-

21, 51-52). In fact, the record is clear that Stephenson is not the individual who handles requests for accommodations. (*Id*. at 51-55). Rather, Christy, in consultation with Mace, reviewed Plaintiff's medical restrictions, and in accordance with its policy, told Plaintiff she would need to take a leave of absence until she was able to perform her essential job functions. (*Id*. at 97; Mace Aff. ¶¶ 5, 7; Christy Dep. at 34-35).

Accordingly, for the reasons set forth above, Plaintiff fails to establish a prima facie case, and thus, her pregnancy discrimination and national origin discrimination claims, fail as a matter of law. *See Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997) ("We need not reach the issue of pretext, as plaintiff has failed to state a prima facie case of discriminatory discharge under *McDonnell Douglas*."). Wal-Mart's motion for summary judgment on these discrimination claims is therefore **GRANTED**.

    **B.**    **Retaliation**

Plaintiff contends she was retaliated against after she filed her EEOC charge of discrimination by terminating her employment rather than accommodating her temporary medical restrictions due to her pregnancy. (Plaintiff Dep. at 198-99). Plaintiff proceeds under the direct and indirect methods of proof. Under the direct method of proof, she must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action by the employer; and (3) there was a causal connection between the protected expression and the adverse action. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Under the indirect method, Plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she was performing her job to her

employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id*. Once a prima facie case is set forth, the burden-shifting pretext analysis takes place. *Id*. Plaintiff proceeds under both methods of proof. The court will begin with her direct case.

In the context of a retaliation claim, the adverse action must be "'materially adverse to a reasonable employee.'" *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). For the reasons stated *supra*, Wal-Mart's actions were not materially adverse, as Wal-Mart offered her a leave of absence pursuant to its Accommodation in Employment Policy.

As evidence of "a causal connection between [Plaintiff's] protected activity and the decision to force her to take LOA," Plaintiff points to an email exchange between Christy and Mace, dated May 18, 2009. (Plaintiff's Response at 23). The exchange reads, in relevant part:

> Christy: We have an associate that has filed a law suit [she meant an EEOC charge] stating that she miscarried do [sic] to lifting more than 20 pounds. Now she is pregnant again. I have a Dr.'s order [stating that she is to] avoid lifting more than 10 pounds. Can we have her to go on LOA now or what do we do with her (Svetlana Arizanovska)[?] She works overnights.
>
> Mace: Yes, she will need to take an LOA until she is able to work within the essential job functions.

(Plaintiff's Ex. 11). This email exchange is not evidence of a causal connection of

unlawful retaliation. Instead, it is evidence that Wal-Mart applied its Accommodation in Employment Policy to her.

Finally, to the extent Plaintiff discusses the similarly situated requirement of an indirect case, for the reasons discussed *supra*, Plaintiff cannot establish that element, and her indirect case fails as well. Wal-Mart's motion for summary judgment on Plaintiff's retaliation claim is therefore **GRANTED**.

### C. State Law Claims

Plaintiff also brings state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent supervision, and respondeat superior liability. Having dismissed Plaintiff's federal claims, the court must decide whether to retain jurisdiction over these state law claims now that her federal claims are dismissed. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). The record reflects that Plaintiff's state law claims arise out of the same operative facts as her federal claims. Accordingly, the court takes supplemental jurisdiction over these claims. 28 U.S.C. § 1367(a); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999).

#### 1. Intentional Infliction of Emotional Distress

Plaintiff alleges that her miscarriage in late January 2009 and the events at Wal-Mart that allegedly precipitated the miscarriage caused her severe emotional distress. To prevail on her intentional infliction of emotional distress claim, Plaintiff must establish

that Wal-Mart: (1) "engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *York v. Fredrick*, 947 N.E.2d 969, 976 (Ind. Ct. App. 2011) (citing *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009)). "The requirements of this tort are rigorous." *Id*. Indeed, the conduct complained of must be:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim "Outrageous!"

*Id*. (citing Restatement (Second) of Torts § 46, cmt. D). In assessing the conduct of Wal-Mart's supervisors, Buckner and Houston, the court gives a brief recount of the facts leading up to Plaintiff's first miscarriage.

On January 12, 2009, Plaintiff went to the emergency room complaining of a vaginal discharge. (*Id*. at 126; Plaintiff Dep. Ex. 31). That was the third time she had been to the emergency room that month – the first time for bleeding and/or spotting, and the second for flu-like symptoms. (Plaintiff Dep. at 82-84; Plaintiff Dep. Ex. 31). The emergency room doctor referred Plaintiff to her family doctor, who placed her on a 20 pound lifting restriction. (Plaintiff Dep. at 126-27). She presented the note to Buckner, who placed her in the baby food and toothbrush aisles. (*Id*. at 128). On January 25, 2009, for reasons unknown, Buckner assigned Plaintiff to Aisle 3. (*Id*. at 129). Rather than discuss her assignment with Buckner, Plaintiff complained to Houston. (*Id*.). Houston neither did nor said anything, even after Plaintiff informed him that she was

13

spotting and expressed concern for her pregnancy. (*Id*. at 129-31). When Buckner was asked during her deposition why she assigned Plaintiff to Aisle 3 on January 25, 2009, and did not reassign her after she learned that Plaintiff did not want to work in that aisle, she did not have an answer beyond the fact that she assigned her to Aisle 3. (Buckner Dep. at 23) ("Q: To your knowledge, was that request [to be placed in another aisle] honored? A: No, because we continued to put her in Aisle 3."). Plaintiff miscarried on January 27, 2009. (Plaintiff Dep. at 134-36).

While the conduct of Buckner and Houston was callous and insensitive, Buckner's decision to assign Plaintiff to Aisle 3, and Houston's disregard of her pleas to be reassigned to another aisle, do not rise to the level of extreme and outrageous conduct necessary to support the tort of intentional infliction of emotional distress. January 25, 2009, was the first and only time Buckner assigned Plaintiff to Aisle 3, and there is no evidence that Plaintiff's placement in Aisle 3 was a cause of the miscarriage. Indeed, she had experienced spotting and/or bleeding just weeks before. Moreover, Plaintiff also worked a day job at Henry Schein which, like her Wal-Mart night job, was physical in nature. Finally, there is no evidence in the record to support the inference that either Buckner or Houston had the intent to inflict emotional harm to Plaintiff or knew that such distress was substantially certain to result from their conduct. *Chivers v. Central Noble Comm. Schools*, 423 F. Supp. 2d 835, 857 (N.D. Ind. 2006) ("[T]he Restatement of Torts explains that the tort can occur not only where an actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain, to

14

result from his conduct.") (citations omitted).  Accordingly, Wal-Mart's motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress is therefore **GRANTED**.

### 2. Negligent Infliction of Emotional Distress

Plaintiff also alleges that Wal-Mart is liable for negligent infliction of emotional distress.  Specifically, Plaintiff alleges that "the specter of a miscarriage" caused Plaintiff to request that Buckner assign her to an aisle other than Aisle 3, and that Buckner's refusal to do so, coupled with Plaintiff's miscarriage two days later, caused Plaintiff emotional distress.

Indiana's "modified impact rule" provides that "'a plaintiff [who] sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person'" may maintain an action for that emotional trauma.  *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 995-96 (Ind. 2006) (quoting *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991)).  The direct impact sustained by the plaintiff must be a physical one; however, it need not be initiated by the tortfeasor.  *Id*. at 996; *Bader v. Johnson*, 732 N.E.2d 1212, 1222 (Ind. 2000) (citing *Conder v. Wood*, 716 N.E.2d 432, 435 n.3 (Ind. 1999)).  "Rather, the impact need only 'arise[] from the plaintiff's direct involvement in the tortfeasor's negligent conduct.'"  *Bader*, 732 N.E.2d at 1222 (citing *Conder*, 716 N.E.2d at 435 n.3); *see also Alexander v. Scheid*, 726 N.E.2d 272, 284 (Ind. 2000) (holding that the purpose of the modified impact rule "is to confine

recovery to those with 'direct involvement' in the defendant's negligent act or omission"). In other words, Plaintiff must show that the emotional pain she experienced from her miscarriage[3] arose from Buckner's negligent conduct.

Plaintiff fails to show how Buckner was negligent in refusing to reassign her to a different aisle on January 25, 2009. In fact, Plaintiff does not address nor explain Buckner's alleged negligence nor the elements of such a claim – duty, breach of that duty, and causation – at all. Accordingly, Wal-Mart's motion for summary judgment on Plaintiff's claim for negligent infliction of emotional distress is **GRANTED**.

### 3. Negligent Supervision

Plaintiff alleges that Wal-Mart failed to train its employees on the anti-discrimination laws, and knew, or in the exercise of reasonable case should have known, that its supervisors were engaging in unlawful behavior. To prevail, Plaintiff must show that Wal-Mart "negligently retained an employee knowing that the employee was in the habit of misconducting himself." *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994); *see also Grzan v. Charter Hosp. of Nw. Ind.*,

---

[3] An Indiana court may find that a miscarriage resulting from a tortfeasor's negligence satisfies Indiana's modified impact rule. In *Bader v. Johnson*, *supra*, the Indiana Supreme Court held that a woman (Connie Johnson), whose physician failed to discover her unborn child's congenital defects until it was too late to terminate the pregnancy (at 33 weeks), and the child died four months after birth, could bring a claim for negligent infliction of emotional distress. 732 N.E.2d at 1222. The Court reasoned that the woman's "continued pregnancy and the physical transformation her body underwent as a result, satisfy the direct impact requirement of our modified impact rule. Provided she can prevail on her negligence claim, the court sees no reason why Connie should not be able to claim damages for emotional distress." *Id*. The court need not reach this issue, however, because Plaintiff has failed to show that her miscarriage arose from Buckner's negligent conduct, a necessary prerequisite to bring such a claim.

702 N.E.2d 786, 793 (Ind. Ct. App. 1998) (stating that the plaintiff must show that the defendant knew or had reason to know of employee's misconduct and failed to take appropriate action).

Wal-Mart has a published anti-discrimination policy that prohibits all acts of discrimination, and computer-based training is provided to all associates on those policies. (Declaration of Joseph Stephenson ¶ 6). This fact remains undisputed. Moreover, there is no evidence to support Plaintiff's contention that Buckner and Houston ever engaged in illegal behavior, or that Wal-Mart failed to supervise them. This lack of evidence is fatal to her claim. Accordingly, Wal-Mart's motion for summary judgment on Plaintiff's claim for negligent supervision is **GRANTED**.

### 4. Respondeat Superior

Finally, Plaintiff brings a claim for respondeat superior liability against Wal-Mart for the acts of Buckner and Houston. Because the court finds that they did not engage in any acts which would subject them to liability, the court must **GRANT** Wal-Mart's motion for summary judgment on this claim as well.

### IV.     Conclusion

For the reasons set forth above, Wal-Mart's Motion for Summary Judgment (Docket # 34) is **GRANTED**.

**SO ORDERED** this  22nd   day of September 2011.

                                                                        _____
                                                                        RICHARD L. YOUNG, CHIEF JUDGE
                                                                        United States District Court
                                                                        Southern District of Indiana

Electronic Copies to:

Swaray Edward Conteh
contehlaw@att.net

Shannon Marie Shaw
BARNES & THORNBURG LLP
sshaw@btlaw.com

Susan M. Zoeller
BARNES & THORNBURG LLP
susan.zoeller@btlaw.comgoogle.com